# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andres Serrato Garnica, | No. CV- 24-00004-PHX-DLR (JZB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Ryan Thornell, et al., | |
| Respondents. | |

TO THE HONORABLE DOUGLAS L. RAYES, SENIOR UNITED STATES DISTRICT JUDGE:

Petitioner Andres Serrato Garnica has filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

## I.      Summary of Conclusion.

Petitioner submits one ground alleging ineffective assistance of trial counsel. Petitioner claims his trial attorney failed to introduce favorable evidence to the jury. But Petitioner's claims are not supported by the record, and he does not demonstrate the rulings of the Arizona courts were unreasonable. Petitioner also has not established that he was prejudiced by any deficient conduct by counsel. The Court will recommend that the Petition be denied and dismissed with prejudice.

## II.      Background.

### A.      Facts.

The Arizona Court of Appeals found the following facts and procedural history as

true:[1]

> Garnica and his wife, M.P., and their two young children were preparing to move from Phoenix to California, where Garnica's father and step-mother lived. Garnica enlisted his neighbor, J.L., to help load a truck that Garnica had rented for the move. Shortly after the men began packing, M.P. was walking with the couple's children toward the kitchen, when she heard two gunshots. M.P. took the children to the bedroom. When she returned to the kitchen, she found Garnica holding a gun and standing over J.L., who was on the floor bleeding from gunshot wounds to his head and torso. When the victim managed to come to his feet, Garnica grabbed him and "hog-tied" him with a rope. J.L. soon died. After Garnica threatened to kill her too, M.P. helped him quickly clean up after the shooting. The two placed the body in a children's playpen and positioned the playpen in the back of the rental truck.

> Early the next morning, the family proceeded to California, with Garnica driving the truck and M.P. following in a car with their children. They arrived at Garnica's father's house later that day. At about 9:00 P.M., local law enforcement responded to a call at the home. Unaware of the murder, police arrested Garnica, seized his Glock 45-caliber handgun and charged him with domestic violence and weapons violations.

> The following morning, M.P. informed Garnica's father of the body in the truck and he called police. Law enforcement discovered the body and transported Garnica to the local sheriff's department to be interviewed. During the interview, Garnica confessed to shooting and killing J.L.

> Meanwhile, J.L.'s wife, G.L., had become concerned when her husband did not return home from helping Garnica load the tuck. She noticed the truck that she had seen at the Garnica apartment was gone and the apartment was dark. Worried, she called police, who informed her she had to wait a week to report her husband missing.

> After Garnica was charged and extradited to Arizona, a jury found him guilty of second-degree murder. The jury also found six aggravating factors. The superior court weighed the aggravating and mitigating factors and imposed the maximum sentence of 25 years in prison.

(Doc. 9-4 at 94-95.)

---

[1] The Arizona Court of Appeals' recitation of the facts is presumed correct. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that statement of facts in state appellate court's opinion should not be afforded the presumption of correctness).

**B.    Direct Appeal.**

Petitioner was convicted on July 10, 2017. (Doc. 1 at 1.) On July 27, 2017, he filed a timely notice of appeal. (Doc. 9-1 at 1012.) On January 10, 2019, the Arizona Court of Appeals affirmed Petitioner's conviction and sentence. (Doc. 9-4 at 93, 101.) Petitioner did not file a petition for review. (*Id.* at 103.)

**C.    Post-Conviction Relief Proceedings.**

On May 20, 2019, Petitioner filed a PCR notice, which was dismissed by the trial court for being untimely. (*Id.* at 112.) However, the trial court later granted Petitioner leave to file a delayed PCR notice. (*Id.* at 120.) On January 18, 2022, Petitioner's appointed counsel filed a "Notice of Completion of Review," which said he could "find no meritorious claims for PCR." (*Id.* at 123.) Petitioner was granted until July 18, 2022, to file a pro se PCR petition. (*Id.* at 132.) The court later extended the deadline to February 6, 2023. (*Id.* at 136.)

On February 10, 2023, Petitioner filed his pro se petition claiming ineffective assistance of trial and appellate counsel, and that the court should review the entire case "for fundamental errors." (*Id.* at 143-45.) The State filed a response, and Petitioner filed a reply. (*Id.* at 148, 367.) The trial court dismissed the PCR petition after finding there were no colorable claims. (*Id.* at 374.) The Arizona Court of Appeals granted review but denied relief on November 28, 2023. (*Id.* at 423.) Petitioner did not file a petition for review with the Arizona Supreme Court. (*Id.* at 425.)

**III.    Petitioner's Habeas Petition.**

On January 2, 2024, Garnica filed the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The Petition asserts that "the trial attorney was grossly ineffective in violation of the fifth and sixth amendment." (Doc. 1 at 6.) The Court will look to the Petition for Post-Conviction Relief to find the specific instances of alleged ineffective assistance of trial counsel because the habeas petition does not include further details of how Petitioner's counsel was ineffective. In his Petition for Post-Conviction Relief, Petitioner claims his counsel was ineffective in three ways: (1) his attorney should have introduced evidence to the jury that the crime scene was contaminated before

- 3 -

evidence was gathered, (2) his attorney should have presented to the jury that the Defendant's fingerprints were not found on the murder weapon, and (3) his attorney should have used a photo of blood on his wife's boots to discredit her testimony. (Doc. 1-1 at 80-84.)

### A.     Time Calculation.

The Antiterrorism and Effective Death Penalty Act of 1996, or "AEDPA," imposes a one-year limitation period, which begins to run "from the latest . . . date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). On November 28, 2023, the Arizona Court of Appeals granted review and denied relief in Petitioner's PCR proceedings. (*Id.* at 423.) On January 4, 2024, the mandate issued. (*Id.* at 425.) The Petition for Writ of Habeas Corpus was filed on January 2, 2024. (Doc 1.) Because the Petition was filed within one year of the Arizona Court of Appeals' decision to deny relief, the Petition was timely filed.

### B.     Ground One.

Petitioner alleges "the trial attorney was grossly ineffective in violation of the 5th and 6th Amendment." (Doc. 1 at 6.)

Petitions for Habeas Corpus are governed by AEDPA. 28 U.S.C. § 2244. "[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court "shall not" grant relief for "any claim that was adjudicated on the merits in State court proceedings" unless it:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)

Under 28 U.S.C. § 2254(d)(1), "clearly established Federal law" refers to holdings

of the Supreme Court in effect at the time the state court rendered its decision. *Greene v. Fisher*, 565 U.S. 34, 36 (2011); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court."). State court decisions are "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a different result from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 786, 786-87 (2011).

The prevailing federal law as determined by the Supreme Court for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). For a Petitioner to prevail under *Strickland*, they must show both that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88. Under *Strickland*, petitioner's trial counsel is subject to a presumption of competency. *Id.* at 689. A *Strickland* petitioner bears the burden of providing the evidence from which the Court can conclude his counsel was ineffective. *See Turner v. Calderon*, 281 F.3d 851, 878 (9th Cir. 2002).

### 1.    Contamination of the Crime Scene.

Petitioner asserts "the place where supposedly the crime was committed was completely contaminated when other people enter[ed] it before the evidence was obtained. So any evidence was a produce of a poisonous tree. But the attorney failed to introduce that to the jury to create a reasonable doubt." (Doc. 1-1 at 73.)

The trial court ruled that the issue had been raised during trial and found "no showing that counsel's performance fell below objectively reasonable standards." (Doc. 9-

4 at 374.) The Arizona Court of Appeals summarily affirmed. (Doc. 9-4 at 426.)[2]

Petitioner fails to establish the decisions of the Arizona courts were unreasonable because trial counsel introduced evidence that at least two individuals entered the crime scene before the victim's body was discovered and before a search warrant was obtained. The victim's wife, G.L., testified that she was searching for the victim and went into Petitioner's apartment across the hallway, which was the scene of the murder. Petitioner's counsel asked G.L. if she had permission to enter the apartment, whether she was alone, if the police were with her, what she touched in the apartment, whether she was wearing gloves, and how far into the apartment she searched. (Doc. 9-1 at 86-87.) During cross examination of Detective Duran, Petitioner's attorney asked, "[Y]ou [were] made aware that other people other than Mr. Serrato had been in the apartment prior to the police taping it off?" (*Id*. at 694.) Detective Duran answered, "Yes," and explained that he "believe[d] there were some names of officers that had gone in [the apartment] prior," as well as the victim's wife. (*Id*.) Finally, in closing argument, Petitioner's attorney argued to the jury that multiple people had been in the apartment. (*Id.* at 836.)

> Before the police arrived . . . people had already been into the apartment, been through every room, and nobody questioned that. . . . There was never any prints taken or anything to exclude anybody who said they had already been into the apartment. And, in fact, I would argue to you they didn't investigate to find out how many people had actually been in the apartment. If somebody is walking around a potential crime scene, it taints that crime scene. You can't trust what that evidence is because it's not left where they believe it was left.

(*Id.* at 836-37)

Petitioner has not provided evidence sufficient to satisfy the reasonableness prong of *Strickland*. Petitioner's attorney raised the contamination concerns through cross-examination and closing argument. Because the issue was raised to the jury on three

---

[2] Because the Arizona Court of Appeals summarily affirmed the trial court ruling, this Court reviews the trial court's ruling. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (stating that when a state court does not provide reasons for its decision, a "federal court should 'look through' [an] unexplained decision to the last related state-court decision that does provide a relevant rationale.").

separate occasions, the conduct of Petitioner's attorney did not fall below *Strickland's* reasonableness standard. Having determined that counsel's performance was not deficient—and the state court's application of *Strickland* was not unreasonable—the Court need not consider *Strickland's* prejudice prong. *See Strickland*, 466 U.S. at 697; *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").

### 2. Petitioner's Fingerprints Not Found on the Murder Weapon.

Petitioner next claims his counsel was ineffective "because no [Petitioner's] fingerprint was found on the gun or at least none was introduced to the jury consideration." (Doc. 1-1 at 73.) The Petitioner asserts that his fingerprints not being found on the gun "by itself is a reasonable doubt. But again the attorney failed to disclose it." *Id.*

The trial court found that this issue was raised at trial and the Petitioner made "no showing that trial counsel's performance fell below objectively reasonable standards." (Doc. 9-4 at 374.) The Arizona Court of appeals summarily affirmed. (*Id.* at 423.)

Petitioner has not shown that the decisions of the Arizona courts were unreasonable because his trial counsel introduced the evidence at trial. The undisputed facts about the crime lab testing are that the victim's DNA was identifiable on the murder weapon[3] (the Glock .45 caliber handgun owned by the Petitioner). (*Id.* at 545-47.) The second undisputed fact about the murder weapon is that there were two latent prints that could be photographed, but not identified using the crime lab's automated database. (*Id.* at 512-13, 533-34.)

During closing argument, Petitioner's attorney argued to the jury that these uncertain results from the crime lab cast doubt on whether the Petitioner handled the murder weapon. (Doc. 9-1 at 845-51.) Counsel argued, "[T]here were three different people

---

[3] The Glock .45 caliber handgun was identified as the murder weapon based on: (1) the presence of the victim's DNA on the muzzle, (2) the spent .45 caliber shell casings that were recovered with the murder weapon (*id.* at 415-16), and (3) ballistics testing on the shell casing left behind. (*Id.* at 651-55.)

who could have come in contact with that handgun, but [the lab] didn't have enough to tell you [who] it was." (*Id.* at 845).[4] Petitioner's attorney continued by questioning the objectivity of the investigation. *Id.* "This is what happens when a government investigation is to just confirm what they want or think or believe to be true . . . . All we have is a jump to confirm that it must have been [Petitioner]." (*Id.*) Counsel also criticized the shortcomings of the lab. Petitioner's attorney argued, "[T]he other testimony from all these lab people was filled with excuses and reasons why they can't come up with something . . . it's a wonder this lab gets any kind of evidence." (*Id.* at 849.) Counsel argued,

> [Y]ou have two prints that somebody took a photo off of one gun, and what gun was that? The Glock. Because the entire focus of everything that the Phoenix lab did with respect to the two guns was focused on the Glock that they wanted to attach to my client because he said he had a Glock. . . . They didn't even want to see if there was any potential evidence there that could have told a different story.

(*Id.* at 850-51.)[5]

Petitioner's counsel shared with the jury their doubts about the Phoenix crime lab's overreliance on their automated database. (*Id.*) "I guess, hypothetically something in the database might have given them some information about the fingerprints, two of them. But it wasn't good-enough information to put in the system . . . They can get things from a computer, but they have to always verify." (*Id.*) These statements in the final moments of the defense's case questioned the procedural integrity of the crime lab and cast doubt onto the lab's findings. (*Id.* at 843, 848-851.)

Petitioner has not established that the conduct of his attorney fell below the *Strickland* standard. Petitioner's claim regarding fingerprints was a critical component of the defense's closing argument. (Doc. 9-1 at 848-51.) The Petitioner's assertion that his

---

[4] DNA testing on the murder weapon revealed three potential genetic contributors, but only the victim's DNA was of a high enough concentration to be positively identified. The other two contributors could not be identified. (*Id.* at 545-47.)

[5] Petitioner's attorney referenced "one gun" because there was a second handgun discovered with the victim's body. (Doc. 9-1 at 379-80.) The second handgun was a .40 caliber Smith & Wesson owned by the victim. (Doc. 9-1 at 80.)

attorney was ineffective because she did not disclose the fingerprints issue to the jury is not supported by the record.

Petitioner also cannot show he was prejudiced by any alleged failure of counsel. There was other evidence in the record to suggest that the Petitioner handled the weapon, even if his fingerprints were not found on the weapon. The evidence includes: (1) Petitioner's concession to owning the gun (doc. 9-1 at 746); (2) Petitioner's confession to Detective Sandoval that he shot the victim with the gun (*id.* at 753-755); (3) the testimony of the Petitioner's wife that she saw him holding the gun and standing over the victim immediately after hearing two gunshots (*id.* at 183-84, 190, 197); (4) the gun had the victim's DNA on it at the time of Petitioner's arrest and was in the bedroom of the Petitioner's father's home (*id.* at 308-10, 545-47, 560); and (5) the gun's carrying case was found among the Petitioner's belongings (*id.* at 366-67, 372-73). The substantial evidence that the Petitioner was the owner of the gun indicates that even if his counsel was ineffective on this issue, no prejudice resulted. Petitioner has failed to meet his burden under *Strickland*.

### 3. Impeaching the Wife's Testimony with Photograph of Boots.

Petitioner's final assertion is that "[i]n the evidence there is a photo of [one of] the boots of the witness that shows blood at the ankle level but she stated she was not present when the shooting happened." (Doc. 1-1 at 73.) Petitioner asserts that "[a]gain the attorney failed to discredit the witness about her presence at the time of the crime to create a reasonable doubt." *Id.* Petitioner raised this claim in his PCR petition. (Doc. 9-4 at 143.)

The trial court could not "find trial counsel's decision not to raise the 'blood on the boot' issue to be anything more than a strategic or tactical decision given the other evidence in the case (i.e. the witness [Petitioner's wife] assisted [Petitioner] in cleaning up the crime scene and subsequently placed her boots in a bag with bloodstained items.)." (Doc. 9-4 at 374.)

Petitioner fails to establish the decisions of the Arizona courts were unreasonable. Petitioner must prove a higher standard of ineffectiveness than *Strickland* on this matter because tactical decisions of an attorney are given great deference. *Dows v. Wood*, 211

F.3d 480, 487 (9th Cir. 2000) ("Counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference and must similarly meet only objective standards.").

Here, counsel's tactical decisions regarding the blood on M.P.'s boot were not deficient. The prosecution and defense agreed that M.P. was present at the scene where the victim died. M.P. testified that she entered the room after hearing gun shots and saw the victim on the floor. (Doc. 9-1 at 183-184.) She testified that she helped clean the crime scene. (*Id.* at 201-202.) Petitioner also testified that M.P. helped clean the crime scene. (Doc. 9-1 at 725-726.)  Counsel's decision to not question M.P. about blood on her boot was not deficient when the parties agreed M.P. assisted with cleaning the crime scene. Instead, counsel cross-examined M.P. regarding where she was at the time of the killing (doc. 9-1 at 224-25); why she changed out of her clothes after helping to clean up the crime (*id.* at 227, 265); why she initially withheld information from detectives in her first interview (*id.* at 259); her involvement in cleaning up the crime scene (*id.* at 259, 275-77); and whether she wanted to retrieve her boots from the U-Haul trailer in order to wash them in the days shortly after the crime. (*Id.* at 248.)

The strategic decision of Petitioner's attorney not to impeach M.P.'s testimony using the bloody boots photograph is supported by two facts: (1) the bloodstains could have originated when Petitioner told M.P. to help him clean up the crime scene and; (2) the boots in question were found in a bag among other bloodstained articles of clothing. Each fact provides an explanation for why M.P.'s boots were stained, and may also explain why Petitioner's attorney did not question M.P. about the photograph. Because there are plausible explanations for the stains, and because Petitioner's attorney did impeach M.P.'s testimony, it is unlikely that Petitioner was prejudiced by his attorney not pursuing the specific line of questioning he contends was necessary.

Even if Petitioner's attorney was deficient, Petitioner cannot establish that he was prejudiced due to the overwhelming evidence of guilt. *See Allen v. Woodford*, 395 F.3d 979, 999 (9th Cir. 2005) ("Even if counsel's conduct was arguably deficient, in light of the overwhelming evidence of guilt, [Petitioner] cannot establish prejudice."). The

overwhelming evidence of guilt includes: (1) Petitioner's confession; (2) M.P.'s testimony; (3) Petitioner's ownership and possession of the murder weapon; (4) the fact that Petitioner placed the victim's body in his U-Haul and drove to California with plans to bury the body; (5) Petitioner's false statements to the victim's wife after the killing; and (6) Petitioner's jealousy for his wife. Petitioner cannot establish that his attorney was ineffective on this matter, or that he was prejudiced because of ineffectiveness. Petitioner's ineffective assistance of counsel claim fails.

**IV.    Evidentiary Hearing.**

Petitioner is not entitled to an evidentiary hearing. Section 2254(e)(2) provides, "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless he meets several stringent elements set forth in section 2254(e)(2)(A)(i) or (ii) and (e)(2)(B). An evidentiary hearing should be held only if "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254 (e)(2)(B). Review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *see also Stokley v. Ryan*, 659 F.3d 802, 807 (9th Cir. 2011) (holding a habeas petitioner was not entitled to an evidentiary hearing because the petitioner did not present a colorable ineffective assistance of counsel claim).

Here, Petitioner is not entitled to an evidentiary hearing. The record presented to the state court does not support an ineffective assistance of counsel claim. Because this claim arises under § 2254(d), review of the claims is limited to the record that was presented to the state court. An evaluation of the state court record reveals that the issues giving rise to Petitioner's claims were presented to the jury. The state court's rejection of Petitioner's claims was not contrary to, or an unreasonable application of, *Strickland*. The state's reasonable application of *Strickland* means that *Pinholster* bars any further factual development of Petitioner's claims. The record is developed, and the issues can be resolved

- 11 -

by reference to the state court record. It is recommended that the Court deny Petitioner's request for an evidentiary hearing.

## V.    Conclusion.

Based on the above analysis, the Court finds that Petitioner is not entitled to relief.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (doc. 1.) be **DENIED** and **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of the Petition is justified, reasonable jurists would not find the ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

//
//
//
//
//
//
//
//
//
//

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 17th day of July, 2024.

Honorable John Z. Boyle
United States Magistrate Judge